UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT KINCHEN,

        Petitioner,

v.                                      Case No.  8:08-cv-1090-T-33MAP

SECRETARY, DEPT. OF CORRECTIONS,
FLORIDA PAROLE COMMISSION,

        Respondent.
_____

**O R D E R**

THIS CAUSE was initiated by Petitioner Kinchen's filing a 28 U.S.C. § 2254 petition

for writ of habeas corpus alleging that the Florida Parole Commission (FPC) violated

Kinchen's constitutional rights under the Ex Post Facto Clause when Kinchen was placed

on conditional release supervision by the FPC, and impliedly, when conditional release was

revoked due to Kinchen's violations and he was "reincarcerated."[1]

---

[1]  The Court construes the petition as a 28 U.S.C. § 2241 petition for writ of habeas corpus pursuant to *Peoples v. Chatman*, 393 F.3d 1352, 1353 (11th Cir.2004) (per curiam), where the Eleventh Circuit stated that a federal habeas corpus petition challenging the actions of a state parole commission, was properly brought pursuant to 28 U.S.C. § 2241,  but was subject to the rules and restrictions set forth in 28 U.S.C. § 2254. *See also, Heard v. Crosby*, 2005 WL 1712306 (M.D. Fla., July 18, 2005).

Under the circumstances of this case, this court's characterization of Kinchen's petition as one filed pursuant to 28 U.S.C. § 2241 is largely a distinction without a difference, as a federal court's "authority to grant habeas relief" to prisoners in custody pursuant to convictions imposed by a state court "is limited by § 2254, which specifies the conditions under which such relief may be granted." *Felker v. Turpin*, 518 U.S. 651, 652

A review of the record demonstrates that Kinchen's petition must be **denied**.

Procedural History

On June 22, 1989, Kinchen committed the criminal offense of Sale of Cocaine.  He was convicted of that offense in Case No. 89-1853CFA in the Sixth Judicial Circuit, Pinellas County, Florida, on April 3, 1990.  On July 10, 1990, Kinchen was sentenced to 25 years incarceration.  He was also adjudged to be a habitual offender. (Exhibit A attached to Doc. No. 7).

On July 18, 1989, Kinchen committed the criminal offense of Sale of Cocaine.  He was convicted of that offense in Case No. 89-18536CFA in the Sixth Judicial Circuit on May 22, 1990.  On July 10, 1990, he was sentenced to 25 years incarceration, with the sentence to run concurrently with the sentence imposed in Case No. 89-1853CFA.  He was also adjudged to be a habitual offender. (Exhibit B to Doc. No. 7).

On August 29, 2005, Kinchen signed the FPC Certificate of Conditional Release and Terms and Conditions of Supervision, and was released from custody on or about September 7, 2005. (Exhibit C to Doc. No. 7). On May 2, 2006, upon the receipt of a violation report, the FPC issued a warrant for retaking Kinchen for alleged violations of supervision. Kinchen was given requisite notice, and his Conditional Release violation hearing was held July 12, 2006. The hearing examiner found Kinchen guilty of twice violating Condition 7 by unlawfully resisting, obstructing, or opposing a police officer in the

---

(1996). Thus, any habeas petition filed by a state inmate is subject to each of the procedural limitations imposed on § 2254 petitions. *Id. See also, Medberry v. Crosby*, 351 F.3d 1049, 1054 n.5 (11th Cir.2003)(there is but one habeas corpus remedy for those imprisoned pursuant to a State court judgment, and  it is governed by both § 2241 and § 2254; for those imprisoned pursuant to a State court judgment, the habeas corpus remedy is authorized by § 2241, but is subject to § 2254 and all of its attendant restrictions).

course of his duties and by unlawfully altering, destroying or concealing evidence; and once violating Special Condition 19 (mandatory residential curfew) by being away from his approved residence without permission. The hearing examiner recommended revocation of Conditional Release. (Exhibit D to Doc. No. 7).

The FPC convened on August 15, 2006 and revoked Kinchen's Conditional Release. (Exhibit E to Doc. No. 7).  On or about November 20, 2006, Kinchen filed a state petition for writ of habeas corpus in the Fourteenth Judicial Circuit Court,  Jackson County, Florida, in case no. 89-18535-3b/06-935-CA, alleging "the wrongful application of the Conditional Release Program Act to his sentence." (Exhibit F to Doc. No. 7).  On April 12, 2007, the FPC filed its response. (Exhibit G to Doc. No. 7).

On June 18, 2007, the state trial court denied Kinchen's petition. (Exhibit H to Doc. No. 7)  Kinchen appealed the state trial court's decision to the state district court of appeal (Case No. 1D07-3678).  On March 19, 2008, the state district court of appeal per curiam affirmed the state trial court's decision, for which a mandate was issued on April 15, 2008. (Exhibit I to Doc. No. 7). On June 5, 2008, Kinchen filed the present Petition for Writ of Habeas Corpus in the  United States District Court for the Middle District of Florida, Ocala Division. This case was transferred to the Tampa Division.

Kinchen's instant petition raises essentially the same grounds for relief that he raised in his Jackson County Circuit Court action, to wit, that the FPC violated his constitutional rights under the Ex Post Facto Clause of the United States Constitution when the FPC placed him on conditional release supervision, and by implication, violated his constitutional rights when conditional release was revoked due to Kinchen's violations of the conditions of release and he was consequently reincarcerated.

## DISCUSSION

### A. Kinchen's Petition is Untimely

As a threshold matter, Kinchen's petition is untimely. Because Kinchen's petition was filed after April 24, 1996, the case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Penry v. Johnson*, 532 US 782, 792 (2001). The AEDPA created a new limitations period for petitions for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of ... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review...." 28 U.S.C. §2244(d)(1)(A). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). This one year limitation period applies to 28 U.S.C. § 2241 petitions. *Medberry v. Crosby*, 351 F.3d 1049, 1054  n.5 (11th Cir.2003).

The FPC action that Kinchen challenges occurred September 7, 2005. However, Kinchen did not file a habeas petition concerning these claims until November 20, 2006.[2] This date is beyond the one-year AEDPA limitations period. Because more than one year had elapsed since Kinchen's cause of action accrued on September 7, 2005, and the date

---

[2] Kinchen's administrative challenges with the Department of Corrections did not toll the running of the one-year limitations period because his administrative challenges did not begin until September 28, 2006, after the one-year period had expired.

he filed his federal habeas corpus petition, November 20, 2006, Kinchen's federal petition is time-barred. Neither equitable tolling nor statutory tolling applies in this case. *Brown v. Barrow*, 512 F.3d 1304 (11th Cir. 2008).

## B. Kinchen is not entitled to relief on the merits

Even if Kinchen's petition were timely-filed, Kinchen is not entitled to relief on the merits.  A habeas corpus proceeding is civil rather than criminal in nature, and the petition "must make out a prima facie case." *Piccirillo v. Wainwright*, 382 So. 2d 743, 747 (Fla. 1st DCA 1980)(quoting *Flicker v. Duff*, 290 So. 2d 129, 130 (Fla. 1st DCA 1974)). Kinchen must support his allegations with evidence. *Mattern v. Florida Parole Commission*, 707 So. 2d 806, 808 (4th DCA 1998). "General allegations are insufficient to demonstrate entitlement to relief." *Id.*

The FPC properly exercised its discretion and was within its authority both when it imposed conditions of supervision on Kinchen and when it revoked Kinchen's Conditional Release supervision based on the Hearing Examiner's findings of guilt. The record demonstrates that the findings of willful and substantial violations were supported by competent substantial evidence. Further, contrary to Kinchen's position, Kinchen was properly placed on Conditional Release.

### The FPC Had Authority To Place Kinchen on Conditional Release

Kinchen's main argument is that because his crime was committed in 1989 and he was released early as a result of gain time, the remaining portion of his sentence was extinguished because his crime occurred before the legislative enactment or amendment of Section 947.1405, Fla. Stat. (Supp. 1988-2006). He claims that, as a consequence, the

FPC had no authority to place him on Conditional Release, and its doing so violated the Ex

Post Facto clause of the United States Constitution. (See Petition, generally.)

At the time Kinchen committed his 1989 offenses, the legislature had enacted

Section 947.1405, Fla. Stat. (Supp. 1988), known as the Conditional Release Program Act,

which provides in relevant part:

> (2) Any inmate who is convicted of a crime committed on or after October 1,
> 1988, which crime is or was contained in category 1, category 2, category 3,
> or category 4 of Rule 3.701 and Rule 3.988, Florida Rules of Criminal
> Procedure, and who has served at least one prior felony commitment at a
> state or federal correctional institution or is sentenced as a habitual or violent
> habitual offender pursuant to s. 775.084, shall, upon reaching the tentative
> release date[3] or provisional release date, whichever is earlier, as established
> by the Department of Corrections, be released under supervision subject to
> specified terms and conditions.

1988 Fla. Laws Ch. 122.

Also, various amendments to existing laws were added in 1988, including subsection

(11)[4] of Section 921.001, Fla. Stat. (Supp. 1988) which reads:

> A person who is convicted of a crime committed on or after October 1, 1988,
> shall be released from incarceration only: (A) Upon expiration of his
> sentence; (B) Upon expiration of his sentence as reduced by accumulated
> gain-time; (C) As directed by an executive order granting clemency; (D) Upon
> attaining the provisional release date; or (E) Upon placement in a conditional
> release program pursuant to s. 947.1405**.**

1988 Fla. Laws Ch. 122.

---

[3]  "Tentative release date" (TRD) means the date projected for the prisoner's release from custody
by virtue of gain-time granted or forfeited, as determined by the Department of Corrections, pursuant to
Sections 944.275(3)(a), 947.005(6), Florida Statutes.

[4]  Section 921.001(11), Fla. Stat. (Supp. 1988) is currently Section 921.001(10)(a), Fla. Stat. (2006).
Section 921.001(10)(a), Fla. Stat. (2006) essentially mirrors the 1988 version of Section 921.001(11), Fla.
Stat., except that the applicable dates of the committed crime include those crimes committed on or after
October 1, 1983 but before January 1, 1994.

In 1988, the legislature also added subsection two (2) to Section 944.291, which prohibits inmates who are conditional release eligible to be totally released from service of a sentence by mere gain-time accrual or application, providing in relevant part:

> (2) Any prisoner who is convicted of a crime committed on or after October 1, 1988, which crime is contained in category 1, category 2, category 3, or category 4 of Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure, and who has served at least one prior felony commitment at a state or federal correctional institution, or is a habitual or violent habitual offender pursuant to s. 775.084, may only be released under conditional release supervision as described in Chapter 947. Not fewer than 90 days prior to the tentative release date, the department shall provide the commission with the name and inmate identification number for each eligible inmate.

1988 Fla. Laws Ch. 122.[5] *See e.g. Young v. Singletary*, 717 So. 2d 543 (Fla. 1998).

Courts should determine legislative intent from the plain meaning of a statute. If a statute's language is clear and unambiguous, legislative intent should be derived from the language and courts should not apply principles of statutory construction. *State v. Dugan*, 685 So. 2d 1210, 1212 (Fla. 1996) (citations omitted). It is evident from the plain language of Sections 947.1405, 921.001(11), and 944.291(2), Fla. Stat. (Supp. 1988), that the legislature intended that inmates who had been convicted of the qualifying offenses (including those who were adjudged habitual offenders) to be subject to Conditional Release Supervision and to be released on Conditional Release Supervision without consideration of the inmate's gain-time accrual. Since the legislative intent can be derived from the plain meaning of the statute, it is not necessary to scrutinize the constitutionality

---

[5]  The same version of Section 944.291(2), Fla. Stat. exists today. See Section 944.291(2), Fla. Stat. (2006).

of the Conditional Release Program.[6] *See State v. Williams*, 584 So. 2d 1119, 1121 (Fla. 5th DCA 1991)(courts have traditionally avoided constitutional issues when a case can be decided on other grounds).

Both Section 775.084(3)(e) and Section 947.1405, Fla. Stat. (the Conditional Release statutes), were enacted in the 1988 legislative session.  Courts are obligated to adopt an interpretation that harmonizes two related, if conflicting, statutes while giving effect to both. *Jones v. State*, 813 So. 2d 22 (Fla. 2002).

In *Jones*, the Florida Supreme Court held that a specific statutory provision controls over a general statutory provision, stating:

> As we have stated, "[i]t is well settled in Florida that the courts will disfavor construing a statute as repealed by implication unless that is the only reasonable construction." *Palm Harbor Special Fire Control Dist. v. Kelly*, 516 So.2d 249, 250 (Fla. 1987). Instead, we are obligated "to adopt an interpretation that harmonizes two related, if conflicting, statutes while giving effect to both." *Id.*

> The sentencing guidelines and section 948.01(13) may be so harmonized by recognizing that one is general, whereas the other is specific. The sentencing guidelines as set forth in section 921.0026 apply broadly to all felonies and provide for general sentencing guidelines. Section 948.01(13), on the other hand, applies only to violations of chapter 893, which defines nonviolent drug crimes. *See* § 948.01(13), Fla. Stat. Thus, the one statute prohibits using drug addiction as a general means for departing from a guidelines sentence, and the other statute provides for a specific treatment alternative to incarceration for specific drug-related crimes. Because a specific statute controls over a general statute and provides an exception to the general rule, *see M.W. v. Davis*, 756 So.2d 90, 106 n. 31 (Fla.2000), the specific language of section 948.01(13) controls over the more general sentencing guidelines.

---

[6] As to the Conditional Release Act's statutes, the Florida Supreme Court has addressed and rejected various constitutional challenges to the Conditional Release Program; see discussion, *infra*, and *Duncan v. Moore*, 754 So. 2d 708, 710 (Fla. 2000).

Here, it is possible to harmonize both statutes by recognizing that the 1988 Chapter 947, Fla. Stat. applied not only to Conditional Release, but also to parole. Inasmuch as the provisions of Section 947.1405 are specific and the reference in Section 775.084(3)(e) is general, applying generally to "chapter 947," the specific language of Section 947.1405 controls over the more general sentencing provisions of Section 775.084.

In the 1993 legislative session, the Florida Legislature recognized the possibly conflicting statutory provisions and amended Section 775.084(3)(e) to read in pertinent part: "The provisions of s. 947.1405 shall apply to persons sentenced as habitual felony offenders and persons sentenced as habitual violent felony offenders."

In *Lowry v. Parole and Probation Commission*, 473 So.2d 1248, 1250 (Fla. 1985), the Florida Supreme Court held:

> When, as occurred here, an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof. *United States ex rel. Guest v. Perkins,* 17 F.Supp. 177 (D. D.C. 1936); *Hambel v. Lowry,* 264 Mo. 168, 174 S.W. 405 (1915). This Court has recognized the propriety of considering subsequent legislation in arriving at the proper interpretation of the prior statute. *Gay v. Canada Dry Bottling Co.*, 59 So.2d 788 (Fla.1952).

In *Parker v. State*, 406 So.2d 1089 (Fla. 1981), the Court recognized that the Court has the right and duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation. *Accord, State Dept. of Banking & Finance v. Evans*, 540 So. 2d 884 (Fla. 1st DCA 1989); *State Dept. of Highway Safety v. Scott*, 583 So. 2d 785 (Fla. 2d DCA 1991); *Pfeiffer v. City of Tampa*, 470 So.2d 10 (Fla. 2d DCA 1985), *rev. den., Grieves v. Pfeiffer*, 478 So. 2d 53 (Fla. 1985); *Automobile Ins. Co. of Hartford, Conn. v. Beem*, 469

So. 2d 138 (Fla. 3d DCA 1985); *State v. Nuckolls*, 606 So. 2d 1205 (Fla. 5th DCA 1992);

*Rowles v. Department of Business Regulation*, 585 So. 2d 319 (Fla. 5th DCA 1991).

It is clear that the legislature never intended that habitual felony offenders be excluded from the operation of Section 947.1405. As a habitual offender, Kinchen was properly placed on conditional release supervision until he completed his court-imposed sentences in full, when he was released from incarceration through the application of gain-time. *See Lincoln v. Florida Parole Comm'n,* 643 So. 2d 668 at 671-672 (Fla. 1st DCA 1994)("the Legislature intended the conditional release program for persons sentenced as habitual offenders"); *Deason v. Florida Department of Corrections*, 705 So. 2d 1374 (Fla. 1998)(habitualization is a separate, free standing criterion for conditional release eligibility); *Hull v. Moore*, 790 So. 2d 560, 562 (Fla. 1st DCA 2001)("An inmate who commits certain types of crimes and who has served time for a prior felony or who is sentenced as a habitual offender must be released into the conditional release program, the length of which is determined by the number of days of gain time awarded."). It was Kinchen's own conduct in violating the conditions of Conditional Release that resulted in the revocation of his Conditional Release and subsequent return to prison to serve the remaining portions of his sentences.

At one time, sentences were deemed satisfied through a combination of time served and gain-time. Various forms of post-release supervision, however, have been enacted to allow individuals to serve a portion of their sentences in prison, and a portion on supervision. In *Dowdy v. Singletary*, 704 So. 2d 1052 (Fla. 1998), the Florida Supreme Court held that individuals such as Kinchen, who had offense dates after October 1, 1988, would be subject to post-release supervision, explaining:

Therefore, for releasees whose offenses were committed after the above-mentioned legislative changes, the State does have statutory authority to consider that the releasees' sentences have not completely expired until completion of the supervisory period. That is, due to subsequent legislation, the retention of an inmate's gain time is now dependent not only upon satisfactory behavior while in prison but also upon satisfactory behavior while under supervision after release. Accordingly, for these inmates, the statements made in *Green* and *Heuring* do not apply. Furthermore, the statements do not apply to inmates who violate other types of supervision such as control release or conditional release. In other words, the decisions in *Green* and Heuring were concerned only with inmates specifically meeting the criteria set forth in *Green* (violation of probation, offense date before October 1, 1989). Therefore, since *Dowdy* does not meet those criteria and especially because Dowdy's forfeiture occurred upon violation of control release, the statements made in *Green* and *Heuring* do not apply to him.

This Court routinely receives a large number of petitions in which it is alleged that "once a prisoner is released due to gain-time, the remaining period of the sentence is extinguished." This quotation is found in petitions concerning a vast array of supervision programs, especially control release and conditional release. Considering the above-mentioned subsequent statutory changes, we take this opportunity to make clear that *Green* stands only for the proposition that upon revocation of probation, community control or provisional release, an inmate is entitled to credit for prior awarded gain time only if the underlying offense was committed prior to October 1, 1989.

704 So. 2d at 1054 (footnotes omitted).

The Florida Supreme Court in *Duncan v. Moore*, 754 So. 2d 708, 710 (Fla. 2000) held that the reasoning of *Dowdy* applied to both Control Releasees and Conditional Releasees. The *Duncan* Court further stated that the retention of gain time is dependent upon satisfactory behavior in prison as well as satisfactory behavior while under early release supervision. *Id.* That Court concluded that placing an individual on Conditional Release supervision does not violate any constitutional rights under the Double Jeopardy Clause, Ex Post Facto Clause, Due Process Clause, or the Equal Protection Clause; nor does it subject an individual to cruel and unusual punishment. *Id.* at 713.

-11-

In *Mayes v. Moore,* 827 So. 2d 967, 971 (Fla. 2002), the Florida Supreme Court, citing *Duncan*, held that the conditional release statute does not increase the maximum sentence but merely requires that certain inmates will complete their sentences outside of prison, still under a degree of supervision, and that conditional release is not an increased punishment program, but rather an assistance program designed to "help these former inmates in bridging the gap between prison and the outside world." *Id.* at 971.  Accordingly, Kinchen's arguments challenging the conditional release program, his placement on conditional release, and the subsequent revocation of conditional release,  fail.

Moreover, Kinchen waived any claim relating to his placement on Conditional Release supervision by waiting until the revocation of his supervision to complain about his placement on supervision. *See Roach v. Mitchell*, 456 So. 2d 963 (Fla. 2d DCA 1984); *Gallagher v. State*, 421 So. 2d 581 (Fla. 5h DCA 1982). In *Joyner v. State*, 594 So. 2d 328, 329 (Fla. 2d DCA 1992), *approved,* 618 So. 2d 205 (Fla. 1993), the Second District Court stated:

> We need not and do not address the defendant's argument that he should not have been sentenced to community control after having been declared a habitual offender. The record on appeal does not indicate that the defendant objected to the community control sentence when it was imposed nor did he timely appeal that sentence thereafter. His acceptance of community control constituted a waiver of the right to attack that community control at revocation. *See Thompson v. State*, 591 So.2d 1114 (Fla. 2d DCA 1992); *Wolfson v. State*, 437 So.2d 174 (Fla. 2d DCA 1983).

To the extent Kinchen challenges any loss of gain-time or calculation of a release date, the Florida Department of Corrections is the appropriate party to address such issues. See Section 944.275, Florida Statutes; F.A.C. Chapter 33. *See also Burgess v. Crosby*, 870 So. 2d 217, 219 (Fla. 1st DCA 2004), which states in n. 4:

> The Florida Department of Corrections is charged with calculating an inmate's sentence and administering the award and forfeiture of gain time for, among other things, revocation of conditional release and prison disciplinary proceedings. In contrast, the Florida Parole Commission is the agency authorized to set presumptive parole release dates and to determine whether to admit an inmate to conditional release or whether an inmate who violates parole or conditional release should be returned to incarceration.

Article I, Section 10, of the United States Constitution prohibits states from enacting ex post facto laws. Under the Ex Post Facto Clause, a state may not apply retroactively any law that "inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1789). The question of whether a particular legislative change produces consequences sufficient to invoke the prohibitions of the Ex Post Facto Clause is a matter of "degree." *Beazell v. Ohio*, 269 U.S. 167 (1925).

It is clear that not every legislative change that "disadvantages" an offender or affects a prisoner's "opportunity to take advantage of the provisions for early release" violates the Constitution. *California Dept. of Corrections v. Morales*, 514 U.S. 499 (1995). Rather, a law must produce "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Morales,* 514 U.S. 509. While no exact formula for determining when a particular legislative change produces a sufficient effect on punishment to fall within the prohibitions for the Ex Post Facto Clause, the United States Supreme Court has made clear that the risk of affecting a prisoner's actual term of confinement must be more than "speculative and attenuated." *Id.* Under *Morales*, the statute must affect the original punishment and it must produce a sufficient risk of increasing the original punishment.

In *Damiano v. Florida Parole and Probation Commission*, 785 F.2d 929 (11th Cir. 1986), the Eleventh Circuit Court of Appeals held:

> Appellant's ex post facto claim is likewise without support here. Such a claim is proper only when subsequent legislation imposes more onerous or disadvantageous punishment. *See Dobbert v. Florida,* 432 U.S. 282 97 S.Ct. 2290, 53 L. Ed. 2d 344 (1977). This is not the case with Florida's revision of the parole statute. When appellant was convicted in 1974, parole was a matter of complete discretion. *See Paschal v. Wainwright,* 738 F.2d 1173 (11th Cir. 1984). It remains so even under the objective parole guidelines of 1978, since parole is still ultimately a matter of discretion. *See id. At 1180* (citing Fla. Stat. Ann. § 947.18). Thus, appellant has not been subjected to more onerous treatment and the 1978 guidelines are constitutionally applicable to his case.

*Id.* at 933. *See also Dobbert v. Florida*, 423 U.S. 282 (1977), *reh den.,* 434 U.S. 882 (holding that procedural changes do not violate ex post facto laws); *Paschal v. Wainwright*, 738 F.2d 1173 (11th Cir. 1984) (Florida Parole and Probation Commission did not violate the Ex Post Facto Clause of the Constitution by applying objective parole guidelines that had been amended after inmate was incarcerated).

The Eleventh Circuit has held that "not every retroactive procedural change in the parole process is prohibited; rather, the prisoner must show that the regulation, 'as applied to his sentence' created a significant risk of increasing his punishment." *Williams v. Henry, et al.*, case no. 00-13892 (11th Cir. April 30, 2001, unpublished opinion)(*citing Morales, supra*). Kinchen fails to offer any evidence to show any risk of increasing his original punishment, and has failed to establish a prima facie case of an ex post facto violation.

**Accordingly, the Court orders:**

That Kinchen's petition is denied. The Clerk is directed to enter judgment against Kinchen and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on October 7, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Robert L. Kinchen

-15-